**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBERT VAUGHN SIMPSON, JR.,**

      **Plaintiff,**

-vs-                                                                                    **Case No. 6:14-cv-2104-Orl-DAB**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for additional findings.

## Procedural History

Plaintiff applied for benefits, alleging that he became unable to work on October 30, 2010 (R.199-205). The agency denied Plaintiff's applications initially and upon reconsideration, and he requested and received a hearing before an administrative law judge ("the ALJ"). On June 21, 2013, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 79-99). The Appeals Council denied Plaintiff's request for review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed his Complaint (Doc. 1), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge, and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to a history of traumatic brain injury, current cognitive disorder, current Attention Deficit Hyperactivity Disorder, Disruptive Behavior Disorder, history of back injury (broken tailbone), chronic kidney stones, chronic urinary tract infections, memory problems, and depression (R. 269).

*Summary of Evidence Before the ALJ*

Plaintiff was twenty four years old at the time of the hearing and decision (R. 199). He dropped out of high school but obtained a GED, and has limited past work experience as a crew member for a fast food restaurant (R. 270).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes the testimony of Plaintiff and his father, the testimony of a Medical Expert (at the ALJ's behest), and the testimony of a Vocational Expert. The record also includes written forms and reports completed by Plaintiff and his parents, written statements from two of Plaintiff's former employers (R. 345-346), and opinions from examining and non-examining state agency consultants.

By way of summary, the ALJ determined that: "The claimant has the following severe impairments: history of traumatic brain injury, major depressive disorder, personality disorder, history of ADD, and history of substance abuse (20 CFR 404.1520(c) and 416.920(c))" (R. 84) but found that his alleged abdominal pain, flank pain, and kidney stones; back pain; and anxiety disorder NOS represent non-severe impairments (R. 85). The ALJ determined that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 85). The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to: "perform medium work as defined in 20 CFR 404.1567(c) and 416.967 (c) except he must avoid heights, vibrations, and dangerous machinery;

and is limited to simple 1-3 step work with no assembly line production demands, better to work with things than people, although he can be in the area with people." (R. 87).

The ALJ determined that Plaintiff had no appreciable past relevant work; however, with the assistance of the Vocational Expert ("the VE"), the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 93), and therefore, the ALJ found Plaintiff was not disabled "from October 30, 2010, through the date of this decision." (R. 94).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the Commissioner's decision was not formulated in accordance with proper standards and was not based upon substantial evidence. Specifically, Plaintiff objects to the evaluation of the opinion evidence, contending that the ALJ erred by not granting proper weight to the testimony of the Medical Expert and by not adequately discussing or evaluating the consultative examination report. Plaintiff also contends that the statements of the lay witnesses were not properly evaluated or weighed, the pain standard was not properly applied, the residual functional capacity finding was not supported by substantial evidence, and the hypothetical posed to the Vocational Expert was incomplete.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Evaluating Opinion Evidence*

Plaintiff objects to the findings made by the ALJ with respect to the opinions of testifying Medical Expert, Michael Friedman, Ph.D., and the report of the consultative psychological examiner, Dr. Paul S. Suich.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). A consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight). Nonetheless, all opinions, even those of non-treating state agency or other program examiners or consultant, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. §§ 404.1527, 416.927, and *Winschel*.

*–Dr. Friedman*

At the administrative hearing, Medical Expert ("ME") Dr. Michael Friedman testified that he is familiar with the listing disability evaluation; he reviewed all of the pertinent exhibits of record and compared it to the mental health listings; and, in his opinion, Plaintiff meets or equals a listing within a reasonable degree of certainty in the field of psychology (R. 22, 28-29). Dr. Friedman explained:

>	A. Well, I think that Mr. Simpson suffers from a severe brain injury, which according to the record resulted in a marked change in his character and his personality. That is a sign, or a diagnostic sign of a brain injury. And also, he had developmental problems when he was in school, he had mild developmental problems in the area of attention and hyperactivity, and I believe that those two medical facts, medical conditions; and the preexisting ADHD, really did combine to a markedly limited his social behavior, and also combined to markedly limited his ability to sustain concentration, persistence and pace. And then in my review of the record, I find that is substantially consistent with that, in terms of the deficits that he has in functioning socially, and in terms of doing practical activities. And as a result of that, I believe that his condition meets and has met the listing as of, I would say the date of his motor vehicle accident.

(R. 30).

The ME testified that alcohol and substance abuse are not material to Plaintiff's impairments and that he would still be disabled absent these (R. 30). The ME further testified that Plaintiff's ability to function outside of any people who are very supportive of him and unlikely to reject and terminate their relationship with him is markedly limited (R. 30). As examples of an impaired level of social functioning, he cited to third party reports at Exhibits 7D and 8D, as well as Plaintiff's behavior at the hearing, observing that Plaintiff "was very nervous and needed his father to comfort him"[1] and noting that, as shown by Plaintiff's interaction with the ALJ, Plaintiff does not handle stress

---

[1] The transcript reflects that Plaintiff was uncomfortable and confused at the hearing. The ALJ began the hearing by observing that Plaintiff "look[ed] like you're disgusted to be here or something" and Plaintiff testified that he was "really nervous" (R. 16). Later, the ALJ asked as follows:
ALJ: Okay. Do you want to be here?
CLMT: Yeah.
ALJ: Because you're acting like you're not entirely happy to be here.
CLMT: I don't know, I just -- I don't feel good.
ALJ: In what way do you not feel good?
CLMT: My heart's pounding, and I have a headache, and my stomach hurts, and I'm really hot.
ALJ: Are those things that happen to you on a routine basis?
CLMT: When I get nervous.
ALJ: Okay. Do you think you can do this hearing today?
CLMT: Yeah.
ALJ: Okay. Okay then.
CLMT: I just feel like you're going to ask me questions about my life that I don't want to answer.
ALJ: Well, we are going to ask you questions; they may involve your life, I don't know. I don't know what the doctor's interested in; I'm more interested in stuff that you're doing day by day. We are going to talk about the drugs you've used in the past; we're going to talk about things like that. Is that going to bother you?
CLMT: Yeah, but I have to answer it.
ALJ: That's true.
ATTY: Can I interject?
ALJ: Certainly.

well (R. 30-32). He stated that he reviewed the report of Dr. Grubbs (at Exhibit 8F), a state agency non-examining consultant who performed a record review, and disagreed with Dr. Grubbs' conclusions that Plaintiff's limitations were mild or moderate (R. 32-34). The ME stated that his finding that Plaintiff met the listing is based primarily on Exhibits 7E, 8D, 6D, 1E, 2E, 3E, 4E, 5E, 6E, 7E, 8E, 9E, and 11E, and, in his opinion, Plaintiff is disabled and probably will be for a long time (R. 34).

In the administrative decision, the ALJ summarized, and rejected, Dr. Friedman's testimony, as follows:

> At the hearing, Dr. Friedman testified that the claimant met a listing due to a brain injury resulting in marked changes in personality. He stated that the claimant also had developmental problems when in school; i.e., problems with hyperactivity and attention. Dr. Friedman testified that these two factors, brain injury and pre-existing ADHD, in combination caused marked limitations in social behavior as well as attention and pace. He stated that the claimant's condition had met a listing as of the date of his ATV accident; *however, alcohol and substance abuse were material to that*. Dr. Friedman testified that he was using Exhibits 7E and 8E, statements from the claimant's mother. In her statements she indicated the claimant stayed home all the time, used cologne to mask his body odor, and never changed his clothes. Yet, the same reports stated that the claimant could use the microwave, went fishing with his father occasionally, and played video games. Dr. Friedman testified that the claimant's mother said her son was fearful of being alon[e], said whatever came to his mind, cried a lot, and that she normally handled his paychecks. He stated that he did read Exhibit 8F, but did not think it added anything to the record. Dr. Friedman testified the claimant was disabled and would be disabled for a long time.
>
> I have rejected the opinion of Dr. Friedman as it is *only based on two exhibits* in the E section, which were completed by the claimant's mother. When asked about the medical record *he summarily rejected the entire F section*. This is not the type of expert opinion that I can trust. Dr. Friedman basically believed that "mother knew best." The evidence does not support this conclusion.

---

ATTY: His -- he asked if his father could be in, and unilaterally said the Judge would prefer you to do it by yourself, but I will interject now that he did request his father to be here. Do you have any objection to his father being with him?
ALJ: Do you need your father in here with you? You understand your father cannot answer these questions?
CLMT: I know.
ALJ: You have to answer them.
CLMT: Just him being here will make me feel better.
ATTY: All right-
ALJ: Okay.
(R. 19-20).

-7-

(R. 85-emphasis added).

Plaintiff contends that the ALJ mischaracterized Dr. Friedman's testimony and the rationale for rejecting the opinion is not supported by substantial evidence. The Commissioner does not directly address either argument, instead contending that an ALJ is not obligated to accept the disability opinion of a Medical Expert and "where, as here, the clinician reports no objective facts/observations/test results to support a conclusion, that conclusion is not credible."

The ALJ misstated the testimony,[2] and the rationale provided is thus both factually and legally unsupportable.[3] While it is true that an ALJ is not obligated to accept a medical opinion, he or she is obligated to evaluate it in accordance with the regulations, and the rationale to discount it must be supported by substantial evidence. As the rationale provided here does not meet that standard, reversal for such consideration is required.

*--Dr. Suich*

Plaintiff underwent a Consultative Examination performed by Paul S. Suich, Ph.D. of Hope Counseling Centers (R. 521-524). A detailed mental status evaluation was conducted and diagnostic impressions included: Major Depressive Disorder, Recurrent, Severe with Psychotic Features; Attention-Deficit/Hyperactivity Disorder Predominately Inattentive Type; Cognitive Disorder; Traumatic brain injury, back injury, broken tailbone, kidney stones, chronic urinary tract infections, headaches, and chronic pain (R. 523). Dr. Suich concluded:

---

[2] Dr. Friedman noted that he reviewed the medical record, and there is no indication that he "rejected the entire F section." Indeed, Dr. Friedman testified that Plaintiff suffers from a severe brain injury, which "according to the record" resulted in a marked change in his character and his personality (R. 29). He also testified with respect to Plaintiff's preexisting ADHD (R. 30). Medical records with respect to both of these medical conditions are found in the F section of exhibits. Moreover, Dr. Friedman testified that he based his opinion on many exhibits, as well as his personal observations of Plaintiff's behavior at the hearing. Finally, Dr. Friedman opined that alcohol and substance abuse were *not* material to Plaintiff's impairments.

[3] A finding that "this is not the type of expert opinion I can trust" is too vague to evaluate, and the statement that Dr. Friedman "basically believed" that "mother knew best" mischaracterizes the expert's testimony, and is a not-so-subtle (and unsupported) belittlement of his expertise.

> *The client's overall presentation appeared valid and consistent with the reported condition. The client's main psychological symptoms appear to coincide with his traumatic brain injury. His change in behavior may be attributed to the brain trauma as well.* Neurological testing is recommended in order to determine the extent of the brain trauma. A cognitive disorder NOS is diagnosed due to the client's history of brain trauma and change in functioning. It is diagnosed provisionally because there are no cognitive test results and no testing was completed during the evaluation. Considering the client's psychological issues began after the accident, a diagnosis of mood disorder due to a general medical condition and a diagnosis of personality change due to a general medical condition should be further investigated and ruled out. *The symptoms based on client report and clinical observations appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for this client is guarded.* In regards to the client's financial management, the client is not recommended to manage benefits and financial decisions.

(R. 524 emphasis added).

In the administrative decision, the ALJ set forth the findings of Dr. Suich at great length, and found: "I give some weight to this record but would note that the Father was present and added his own interpretation of the claimant." (R. 90-91). Plaintiff contends that this evaluation does not comport with the requirement to "state with particularity the weight [s]he gave different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Plaintiff also contends that the presence of Plaintiff's father is inadequate to discount the opinion. In response, the Commissioner argues that the RFC included various limitations on mental functions and "[s]ignificantly, Plaintiff does not explain how Dr. Suich's report is inconsistent with the ALJ's RFC determination." Again, Plaintiff's argument is the better one.

Dr. Suich found Plaintiff's presentation to be valid and consistent with traumatic brain injury, and that the symptoms of his condition were having a moderate to severe impact on his functioning, including vocational performance. If this opinion were to be fully credited, the RFC should reflect "moderate to severe" limitations in functioning. However, the ALJ did not fully credit the opinion, but vaguely discounted it, to an unidentified extent. This is insufficient. *See Ryan v. Heckler,* 762 F. 2d 939, 941 (11th Cir. 1985) ("We cannot . . . conduct a review that is both limited and meaningful

if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."). Even if the Court were to assume that by giving the opinion "some" weight the ALJ was crediting the opinion only to the extent it was not inconsistent with the RFC, she did not provide adequate grounds to do so. The only rationale offered was an implication that, because Plaintiff's father was present at the examination, this somehow served to taint the legitimacy of the examination or opinions rendered. Neither the ALJ in her decision nor the Commissioner in her brief cite to any record support for such an assumption, and the Court finds none. Plaintiff's objection is well taken.

Because the ALJ has failed to properly consider and weigh the evidence, remand is required. Although Plaintiff raises other issues, this is dispositive.[4]

## Conclusion

As the Court finds the evaluation of the opinion evidence does not comply with the dictates of *Winschel* and the resulting finding is not supported by substantial evidence, the final administrative decision is **reversed** and the matter is **remanded under sentence four of 42 U.S.C. § 405(g)**, **for additional consideration of the opinion evidence and for further findings**.[5] The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

---

[4]The record includes pertinent statements from Plaintiff's parents and his former employers regarding Plaintiff's limitations and abilities (R. 290-303, 316-24, 345-6). The administrative decision does not address this evidence. Plaintiff contends that this is error. The Commissioner contends that the statements from these lay sources were duplicative of Plaintiff's allegations and were thus implicitly included (and rejected) in the credibility determination. As the Court finds remand is required for reconsideration of the opinion evidence, on remand the ALJ should also state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990), *citing, inter alia, Brooks v. Sullivan*, 882 F.2d 1375 (8th Cir.1989) (holding that the Secretary is required to consider all the evidence, and finding error in ALJ's failure to consider and evaluate testimony of claimant's wife and former employer as to his physical capabilities).

[5]Although Plaintiff urges the Court to reverse for an award of benefits, such is not warranted here. Remand for an award of benefits is appropriate only where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). That standard is not met here and the ALJ must review and weigh the opinion evidence in the first instance.

**DONE** and **ORDERED** in Orlando, Florida on January 20, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record